UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEAGAN GARLAND,<br><br>Plaintiff,<br><br>v.<br><br>DUANE MORRIS, LLP, et al.,<br><br>Defendants. | Case No. 24-cv-04639-HSG<br><br>**ORDER GRANTING MOTION TO TRANSFER VENUE**<br><br>Re: Dkt. No. 10 |

Pending before the Court is Defendant Duane Morris, LLP's motion to transfer venue, Dkt. No. 10. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). The Court GRANTS the motion.

**I.  BACKGROUND**

Meaghan Garland ("Plaintiff") is an attorney residing in San Diego County. *See* Dkt. No. 1 ("Compl.") ¶ 8. She works in the San Diego office of international law firm Duane Morris, LLP ("Defendant"). *Id.* The firm promoted her to non-equity partner in 2021. *Id.* ¶ 23.

In July 2024, Plaintiff filed a putative class action complaint in this Court against Defendant and Tax Accounting Group, a CPA group affiliated with Defendant. *See* Compl. ¶¶ 1–2, 7. The complaint alleges that Defendant misclassifies its non-equity partners. *Id*. ¶¶ 1–3. According to Plaintiff, non-equity partners at the firm are in fact employees. *Id*. ¶ 32. Plaintiff alleges that due to their misclassification, these individuals are denied certain benefits and protections owed to employees, such as health insurance subsidies, disability insurance, workers' compensation insurance, and expense reimbursement. *Id*. Further, the complaint alleges that by misclassifying these employees as non-equity partners, Defendant unlawfully shifts costs onto them that should only be borne by "bona fide" partners. *Id.* Plaintiff also claims that Defendant

pays its female and diverse attorneys less than male and white attorneys at the firm. *Id*. ¶¶ 3; 183–88.

In response, Defendant denies that non-equity partners are misclassified or that it discriminates in awarding compensation, and contends that Plaintiff's lower compensation was due to her personal performance issues. *See* Dkt. No. 10 ("Mot.") at 2–4.[1]

Plaintiff's complaint seeks declaratory judgment that the non-equity partners are properly classified as employees, on behalf of a nationwide class of Defendant's non-equity partners. *See* Compl. ¶¶ 45, 61–64. The complaint also brings numerous common law claims predicated on the alleged misclassification, including breach of contract, *id.* ¶¶ 79–84; breach of implied covenant of good faith and fair dealing, *id.* ¶¶ 85–93; failure to make required withholdings, *id.* ¶¶ 101–105; fraud and conspiracy to commit fraud, *id.* ¶¶ 110–24, 125–37; negligent representation, *id.* ¶¶ 138–48; breach of fiduciary duty, *id.* ¶¶ 149–60; professional negligence, *id.* ¶¶ 161–65; unjust enrichment, *id.* ¶¶ 166–69; accounting, *id.* ¶¶ 170–71; quantum meruit, *id.* ¶¶ 172–76; and restitution, *id.* ¶¶ 177–82. Plaintiff additionally asserts statutory claims under California's Unfair Competition Law and the California Labor Code on behalf of California-based non-equity partners. *Id.* ¶¶ 65–78, 106–109. Finally, she brings a California Equal Pay Act claim on behalf of the firm's non-white and female attorneys working in California. *Id.* ¶¶ 183–88.

Defendant now moves to transfer the case to the Southern District of California. Dkt. No. 10. Plaintiff opposes transfer. Dkt. No. 22 ("Opp."). Defendant has also moved to dismiss the complaint. Dkt. No. 14.

**II.   LEGAL STANDARD**

Defendant brings its motion under 28 U.S.C. § 1404(a), which allows the district court to transfer any civil action to "any other district or division where it might have been brought" for the convenience of the parties and witnesses and "in the interest of justice." 28 U.S.C. § 1404(a). The moving party bears the burden of showing that the transferee district is a "more appropriate forum." *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000). And the district

---

[1] For ease of reference, the Court refers to the PDF pages rather than the document's internal pagination unless otherwise noted.

court has broad discretion in deciding whether to transfer an action. *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) ("[T]he district court's decision to change venue is reviewed for abuse of discretion. Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge.") (citations and quotations omitted).

The Court engages in a two-step analysis in deciding a motion to transfer under 28 U.S.C. § 1404(a). First, it determines "whether the transferee district was one in which the action 'might have been brought' by the plaintiff." *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960) (quoting 28 U.S.C. § 1404(a)). If it is, the Court engages in an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). In this district, courts consider a range of private interest factors (such as the plaintiff's choice of forum and the convenience of the parties, witnesses, and evidence) and public interest factors (such as the familiarity of the court in each forum with the applicable law, the feasibility of consolidation with other claims, any local interest in the controversy, and the cost differential of litigation in the two forums). *See, e.g., Jones*, 211 F.3d at 499; *Perez v. Performance Food Grp., Inc.*, No. 15-cv-02390-HSG, 2017 WL 66874, at *2 (N.D. Cal. Jan. 6, 2017).

**III.   DISCUSSION**

The parties do not appear to dispute that this action could have been brought in the Southern District. *Compare* Mot. at 6–7, *with* Opp. at 6 (opposing motion to transfer based on Defendant's alleged failure to "show that the Southern District is more convenient," but not disputing that the Southern District is a proper venue). Rather, the parties disagree about whether transferring the case would serve the convenience of the parties and witnesses and promote the interests of justice.

**A.   Plaintiff's Choice of Forum**

Ordinarily, "the defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). However, "[t]he degree to which courts defer to the plaintiff's

3

venue choice is substantially reduced where the plaintiff's venue choice is not its residence or where the forum lacks a significant connection to the activities alleged in the complaint." *See Carolina Cas. Co. v. Data Broadcasting Corp.*, 158 F.Supp.2d 1044, 1048 (N.D. Cal. 2001) (citing cases); *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1156 (S.D. Cal. 2005) (same). Further, in the context of a class action, "the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). "If the operative facts [in a class action complaint] have not occurred within the forum and the forum has no interest in the parties or subject matter, [the plaintiff's] choice is entitled to only minimal consideration." *Id.*

Here, Plaintiff has chosen to bring a class action complaint in the Northern District, where she does not reside. *See* Compl. ¶ 8. The Northern District also seems to lack any significant connection to the claims alleged in the complaint. Although Plaintiff frames this action as a misclassification case targeting Defendant's unlawful firmwide policies, her complaint also includes substantial allegations of discrimination based on her individual experience at the firm. *See id.* ¶¶ 20–22 (alleging Defendant paid Plaintiff a lower salary compared to her peers despite positive reviews of her work), 41–42 (same). Given that Plaintiff exclusively worked for Defendant in San Diego, *id.* ¶ 8, the operative facts underlying these allegations did not occur in the Northern District.

Plaintiff argues that her class allegations nonetheless warrant deference to her choice of venue in the Northern District. She argues that more members of the putative non-equity partner class are based in Defendant's San Francisco office than in its San Diego office. Opp. at 12. She also claims that a majority of putative class members reside out of state, and asserts that traveling to the Northern District would be "more convenient" for them than traveling to San Diego. *Id.* at 13. Finally, she contends that her claims "arise within" the Northern District because more members of the firm's leadership groups that allegedly made "the decision to misclassify" the non-equity partners are based in San Francisco than San Diego. *See id.* (alleging that two members of the firm's Executive Committee are located in San Francisco while none are in San Diego, and five members of the Partners Board are in San Francisco compared to three in San Diego).

These arguments are not persuasive. First, the locations of unnamed putative class

4

members generally are not relevant to venue considerations. *See Ambriz v. Matheson Tri-Gas*, No. C 14-1041 CW, 2014 WL 2753886, at *2 (N.D. Cal. June 9, 2014); *Levine v. Entrust Grp., Inc.*, No. C 12-03959 WHA, 2012 WL 6087399, at *4 (N.D. Cal. Dec. 6, 2012). But even if they were, the Court doubts that the Northern District would be materially more convenient for them than the Southern District. While more California putative class members may be based in San Francisco than San Diego, Plaintiff herself declares that a majority of class members are out of state. However, the Court finds that the inconvenience out-of-state class members would experience travelling to San Francisco is not meaningfully different than the inconvenience of having to travel to San Diego. *See Hangzhou Chic Intelligent Tech. Co. v. Swagway, LLC*, No. 16-CV-04804-HSG, 2017 WL 1425915, at *3 (N.D. Cal. Apr. 21, 2017) (noting that convenience of forum in California or Indiana not meaningfully different for witnesses based in China who would have to travel a significant distance to either forum). *Cf. Heredia v. Sunrise Senior Living LLC*, No. 18-CV-00616-HSG, 2018 WL 5734617, at *6 (N.D. Cal. Oct. 31, 2018) (in class action against senior living facility operator, district where "half of the putative class" resided and where Plaintiff operated more facilities was more convenient for the parties and witnesses than district with fewer class members and facilities).

Second, Plaintiff's claim that a few members of the firm's leadership teams are based in San Francisco is not sufficient to establish a "significant connection" between the facts alleged in the complaint and the Northern District such that the Court should defer to Plaintiff's choice of forum there.[2] In employment actions, including class actions alleging systemic wrongdoing by employers, courts usually conclude that the district in which the named plaintiff worked is the district in which they suffered the violations alleged in the complaint, and thus find that district significantly connected to the case. *See Perez,* 2017 WL 66874, at *3; *see also Easton v. Wells Fargo & Co.,* No. 20-CV-02193-HSG, 2020 WL 3639934, at *3 (N.D. Cal. July 6, 2020) (holding that Plaintiff in employment class action suffered the alleged violations in the forum where her

---

[2] Plaintiff also undermines her argument that the Court should defer to her choice of venue in the Northern District because the claims "arose" there by later claiming that "the operative facts occurred across the country and equally in the Northern and Southern Districts." Opp. at 19.

5

1  "relevant employment occurred"). The Court is also unpersuaded that the presence of a relative
2  handful of leadership team members in the Northern District makes it the locus of the firm's high-
3  level policy and decision-making, since Plaintiff concedes the firm's headquarters is in
4  Philadelphia and its leadership is largely concentrated on the East Coast. *See* Opp. at 15. On the
5  other hand, the Southern District clearly has a "significant connection" to the activities in the
6  complaint as the location of the misclassification and discrimination Plaintiff herself allegedly
7  experienced. Accordingly, the Court finds that Plaintiff's choice of forum is entitled to at most
8  minimal consideration.

### B. Convenience of the Parties and Witnesses

Defendant argues that the Southern District is a more convenient forum for the parties and witnesses because Plaintiff lives in San Diego and worked for Defendant there, such that many of the likely witnesses in this case are partners in Defendant's San Diego office who can testify to Plaintiff's work performance and treatment at the firm. Mot. at 4–5, 16–17.[3] The Court agrees that these facts make the Southern District more convenient than the Northern District.

Plaintiff contends that the Northern District and Southern District are equally convenient for the parties, and that the Northern District will be more convenient for witnesses. Opp. at 8–12. These arguments echo Plaintiff's deference arguments above and are similarly unconvincing. Plaintiff concedes that traveling to San Francisco will be "an inconvenience" for her, though not a significant one. Opp. at 12. Plaintiff also maintains that the Northern District is not inconvenient for Defendant's partners based in San Diego because they are admitted to practice in the Northern District. *See id.* But this is irrelevant to whether appearing as witnesses *themselves* is equally convenient in the Southern District (where they presumably live) and the Northern District (where they definitely don't). At the same time, Plaintiff argues that convenience for the firm's San

---

[3] The Court overrules Plaintiff's hearsay and foundation objections to Defendant's declaration offered in support of its description of the relevance of these potential witnesses, Dkt. No. 22-21. Courts routinely consider such evidence when evaluating the importance and location of potential witnesses for the purpose of ruling on a motion to transfer. *See, e.g.*, *Hangzhou Chic Intelligent Tech. Co. v. Swagway*, LLC, No. 16-CV-04804-HSG, 2017 WL 1425915, at *3 (N.D. Cal. Apr. 21, 2017) (considering declaration describing the relevant knowledge, experience, and topics witnesses would testify about in evaluating convenience of each forum).

Diego-based attorneys is "irrelevant" because the only witnesses of importance are the firm's leaders who "decide, craft, and implement all compensation policies and procedures." *See* Opp. at 15. But most such partners are based in Defendant's Philadelphia headquarters or in its New York office, and none are in San Diego. According to Plaintiff, this favors the Northern District because there are five daily direct flights from Philadelphia to San Francisco, but only three such flights from Philadelphia to San Diego. *See id.* at 12, 15, 16. This argument is not compelling, especially considering that the firm has offices in both of these major metropolitan areas. Moreover, the San Diego-based individuals who Defendant identifies as being able to testify about Plaintiff's work and treatment at the firm are certainly relevant witnesses in this case, completely apart from her class allegations.[4] Plaintiff's argument to the contrary belies the fact that, as discussed, Plaintiff has pled substantial allegations of pay discrimination she personally suffered, and Defendant responds that its actions were justified based on her poor performance. *See* Compl. ¶¶ 20–22; Reply at 7. The testimony of the local partners and employees Plaintiff worked with in San Diego is therefore central to the determination of those claims.

The Court thus finds that Defendant has met its burden of showing that the Southern District is a more convenient forum for the parties and witnesses in this case.

### C. Remaining Factors

The remaining factors the parties discuss are the local interest in the controversy, the forums' familiarity with applicable law, and access to evidence.[5] Plaintiff argues that neither the

---

[4] In her opposition, Plaintiff argues that Defendant's failure to specifically "identify witnesses by name" is "fatal to [its] motion," citing this Court's order in *Packlane, Inc. v. Best & Flanagan, LLP*, No. 23-CV-03496-HSG, 2023 WL 8458263, at *3 (N.D. Cal. Nov. 20, 2023). *See* Opp. at 9. This argument appears to be moot as Defendant has since provided the potential witnesses' names to Plaintiff's counsel. *See* Dkt. No. 27 ("Reply") at 8. In addition, in *Packlane*, the Court found that it was unable to determine the importance of the witnesseses defendants argued would be inconvenienced by the chosen forum because defendants failed to "identify [any]. . . by name, indicate where they currently reside, *or* provide any context for their anticipated testimony." *Packlane*, 2023 WL 8458263, at *3 (emphasis added). The defendant's failure to offer specific names alone therefore was not dispositive of the Court's determination. Here, by contrast, Defendant did not initially share the witnesses' names, but identified where they reside and provided specific descriptions of the relevant testimony they would offer. *See* Mot. at 4–5.

[5] Defendant argues that relative court congestion favors transfer because the Northern District has more filings per judge than the Southern District. *See* Mot. at 19–20. The Court notes that it is generally wary of parties' ability to accurately compare court congestion.

7

Northern nor Southern District has a stronger interest in deciding this controversy because her class action complaint alleges violations that "occurred across the country and equally" in both districts.  Opp. at 14.  Plaintiff is incorrect.  At this early stage of litigation in a putative class action, even one alleging systemic employment law violations, "the district where the named plaintiff worked has the greatest local interest."  *Easton*, 2020 WL 3639934, at *5.  As such, the Southern District has a greater interest in this controversy that the Northern District, especially given that as discussed Plaintiff alleges specific discriminatory actions against her during her employment in San Diego.

Neither of the remaining factors weighs against transfer.  As the parties agree, both forums are federal district courts located in California, and are equally familiar with the applicable California and federal law.  *See Easton*, 2020 WL 3639934, at *6, fn. 9; Mot. at 20; Opp. at 20.  Both courts would also be on equal footing if required to apply the laws of other states to determine employee classification as to the nationwide class outside California.  The parties similarly agree that the evidence is equally accessible in either forum.  *See* Mot. at 20; Opp. at 13.

## IV. CONCLUSION

Having reviewed the relevant factors, the Court finds that Defendant has met its burden of showing that the Southern District is the more appropriate forum.  Accordingly, the Court **GRANTS** Defendant's motion to transfer, Dkt. No. 10.  The Clerk is **DIRECTED** to transfer the case to the Southern District of California, and to close the file.

**IT IS SO ORDERED.**

Dated:   10/4/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge